| | |
|---|---|
| JASON MAC BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.: 4:13-CV-80-HSM-CHS |
| ) | |
| WARREN COUNTY JAIL; NURSING ) | |
| STAFF and ADMINISTRATION; EDDIE ) | |
| KNOWLES, Adm'r; JACKIE MATHENY, ) | |
| Sheriff; DAVE SNOWDEN, Corr. Officer; ) | |
| CHRISTY L/N/U, Nurse; JOE L/N/U, ) | |
| Nurse; and CAROL L/N/U, Nurse, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Acting pro se, Jason Mac Brown brings this civil rights complaint for injunctive and monetary relief under 42 U.S.C. § 1983, claiming that he has been subjected to unconstitutional conditions and treatment at the Warren County Jail in McMinnville, Tennessee, where he is confined [Doc. 1]. Defendants are the Warren County Jail ("WCJ"); the WCJ Nursing Staff and Administration; Eddie Knowles, WCJ Administrator; Jackie Matheny, Warren County Sheriff; and Dave Snowden, a WCJ correctional officer who works the night shift. In the body of the complaint, Plaintiff indicates that Christy L/N/U, Joe L/N/U, and Carol L/N/U are the members of the Nursing Staff whom he is suing in their official capacities as nurses, though he has not identified them as Defendants in the caption of his pleading.

Because the Middle District, where this action was filed originally, assessed the filing fee before transferring the case to this Court [Doc. 3],the Court turns first to the contentions in the complaint.

## I. PLAINTIFF'S ALLEGATIONS

The complaint contains the assertions which follow. Plaintiff suffers from hypoglycemia, a disease evidenced by low blood sugar levels [Doc. 1 p.6]. When Plaintiff's blood sugar levels drop, he suffers from weakness, headaches, and dizziness. However, Plaintiff's blood sugar levels are tested regularly, the levels range in the 60s, though they can descend to levels in the low 50s [*Id.*]. Plaintiff has written many times to the nurse and he has even filed grievances complaining about the failure to measure his blood sugar levels on a regular basis [*Id.*].

Once, when Plaintiff was in the nursing staff room, he was told to check his own sugar levels [*Id.*]. However, the medical device for monitoring blood levels was not functioning [*Id.*]. After this encounter, Plaintiff's blood levels were not monitored. Because of the medical inattentiveness of the nursing staff, Plaintiff sits in his cell and worries, knowing that his blood sugar level is low and that low blood sugar levels can be dangerous [*Id.*]. Plaintiff believes that they would let him die and that, if he did not obtain items from the commissary, he really would be in bad shape [*Id.*]. The medical staff refuses to give an inmate even an aspirin or a Tylenol. Furthermore, the 2,000-calorie per-day diet served at the WCJ is insufficient for Plaintiff because he has low blood sugar [*Id.*].

Additionally, the facility has no existing grievance system and an inmate who asks for a grievance is asked why he needs a grievance [*Id.*]. Plaintiff personally has never seen a grievance form and has used notebook paper to file a grievance. Plaintiff received no response to his notepaper grievance.

2

Plaintiff was arrested on February 15, 2013, and was booked into the WCJ and thereafter assigned to cell number 24 in B-Pod [Doc. 1 p.8]. Plaintiff informed a guard, Defendant Dave Snowden, that he had enemies in that cell, but Defendant Snowden responded that the inmates would just have to "get along" with one another [*Id*.]. Within forty-eight hours, several inmates jumped on Plaintiff and beat him while he was asleep, thus putting him "in imminent danger" [*Id*.]. Plaintiff asks for an unspecified amount of damages for the cruel and unusual punishment purportedly inflicted on him and for the resulting pain and suffering which he sustained from a bodily injury—an injury for which he has provided no further description [Doc. 1 p.6].

## II.     SCREENING and LEGAL STANDARDS

The Court must now review the complaint to determine whether it states a claim entitling Plaintiff to relief or is frivolous or malicious or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2) and § 1915A.  If so, this suit must be dismissed.  In performing this task, the Court bears in mind the rule that pro se pleadings filed in civil rights cases must be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Still, the complaint must be sufficient "to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which simply means that the factual content pled by a plaintiff must permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  The standard articulated in *Twombly* and *Iqbal* "governs dismissals for failure to state a claim under [§§ 1915A(b)(1) and 1915(e)(2)(B)(ii)] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).

3

In order to state a claim under 42 U.S.C. § 1983, Plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *See Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir. 1998); *see also Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) ("Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere.").

The Court examines the claims under these guidelines.

### III. LAW and ANALYSIS

**A. Defendants**

The WCJ, the first Defendant, is a structure that serves as a place for confinement for those in custody, and it is not a suable entity. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 689-90 n.53 (1978) (finding that only "bodies politic" are "persons" who can be sued under 42 U.S.C. § 1983"). The Sixth Circuit has so held. *Marbry v. Corr. Med. Serv.*, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000) (finding that "the Shelby County Jail is not an entity subject to suit under § 1983") (citing *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991)); *Cage v. Kent Cnty. Corr. Facility*, 1997 WL 225647, at *1 (6th Cir. May 1, 1997) (stating that "[t]he district court also properly found that the jail facility named as a defendant was not an entity subject to suit under § 1983"). Hence, because the WCJ is not an entity that can be sued under § 1983, Plaintiff fails to state a claim against this Defendant.

There are no contentions whatsoever against Defendant Sheriff Jackie Matheny. The only allegations Plaintiff makes against Defendant Jail Administrator Eddie Knowles is that he failed to respond to Plaintiff's written complaints about the nurses' alleged failure to monitor Plaintiff's blood sugar levels.

To the extent that Plaintiff is seeking to hold Defendants Matheny and Knowles liable to him for the actions or inactions of the nurses, such a theory of liability does not pass muster. This is so because § 1983 liability must be based on more than respondeat superior, or a defendant's right to control employees. *Iqbal*, 556 U.S. at 676 ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."); *Monell*, 436 U.S. at 691 (finding that liability under § 1983 may not be imposed simply because a defendant "employs a tortfeasor"); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995).

While respondeat superior will not provide a valid basis for § 1983 liability, Plaintiff can still hold these Defendants liable so long as he can demonstrate that they implicitly authorized, approved, or knowingly acquiesced in the alleged wrongdoing of their putative subordinates. *See Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1244 (6th Cir. 1989); *see also Iqbal*, 556 U.S. at 676 (finding that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

However, these two Defendants cannot be held liable for simple negligence, *Frodge v. City of Newport*, 501 F. App'x 519, 532 (6th Cir. 2012), or for only a failure to act. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) (stating that "[s]upervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior'") (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (finding that knowledge of a prisoner's grievance and a failure to respond or remedy the complaint was insufficient to impose liability on supervisory personnel under § 1983). Indeed, there must be "proof of personal involvement" to hold a supervisory defendant personally liable for constitutional wrongdoing. *Grinter v.*

5

*Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (quoting *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005)).[1]

Simply sending a written communication notifying a supervisor of a subordinate's alleged wrongful actions, as Plaintiff purports to have done, is insufficient to show active engagement in the alleged unconstitutional behavior. *Harbison v. Thompson*, No. 3:14-CV-0409, 2015 WL 1034626, at *6 (M.D. Tenn. Mar. 10, 2015) (finding no liability of superior officers based on allegations that they did not respond to letters—the means through which a plaintiff sought to apprise them of a subordinate's conduct).

Plaintiff does not allege that Defendants Matheny or Knowles committed any actual acts or that they authorized, or were personally involved in any unconstitutional conduct on the part of any subordinate; thus, there is nothing from which to conclude that they condoned any such wrongful behavior. No actionable constitutional claims under § 1983 have been asserted against Defendants Matheny or Knowles.

Therefore, Plaintiff has failed to state plausible claims under §1983 against Defendants WCJ, Jackie Matheny, or Eddie Knowles.

**B. Grievances**

Plaintiff's complaints about the lack of a grievance system at the WCJ likewise fail to state a claim for relief under § 1983. The Sixth Circuit has observed that "[a]ll circuits to consider this issue have . . . found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures." *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) (listing cases). "Accordingly, since a violation of a constitutional right is required in order to obtain relief under § 1983," *id.*, and since Plaintiff has no right to a

---

[1] Plaintiff has sued Defendants Matheny and Knowles in their official and personal capacities [Doc. 1 p. 4].

grievance system in the first place, his allegation regarding the lack of a functioning grievance system or the lack of a response to a grievance written on notebook paper fails to state a claim entitling him to relief under § 1983.

**C. Medical Claims**

The Cruel and Unusual Punishment provision of the Eighth Amendment protects prisoners from the infliction of "unnecessary and wanton pain and suffering." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "[D]eliberate indifference to the serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain," which violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

An Eighth Amendment claim is composed of two parts: an objective component, which requires a plaintiff to show a "sufficiently serious" deprivation, and a subjective component, which requires him to show a sufficiently culpable state of mind—one of "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 and 842 (1994). Yet, a prisoner whose claims are based on a theory of medical negligence has not stated a claim under § 1983 because medical malpractice is not a constitutional violation. *Estelle,* 429 U.S. at 106.

The Constitution is not implicated where some medical treatment is given and the dispute is over the adequacy of such treatment. *Westlake v. Lucas,* 537 F.2d 857, 860 n.5 (6th Cir. 1976). For example, "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).

A serious medical need is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a layperson would easily recognize the necessity for

7

a doctor's attention." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004). Plaintiff's assertion that he has hypoglycemia, as he has pled the claim in his pleading, does not constitute a serious medical need.

Plaintiff has not asserted that a doctor diagnosed him as having hypoglycemia or that he had a doctor's order to have his blood levels checked on a regular basis or for a diet which would exceed 2,000 calories per day. Nor would hypoglycemia be so obvious a medical need that a layperson easily would recognize that it required medical attention, where, as is the case here, a prisoner does not allege that he was experiencing any symptoms of a hypoglycemic episode.[2] *Compare Harris v. Prison Health Servs.*, No. 1:10–cv–1301, 2011 WL 672209, at *6 (W.D. Mich. Feb. 18, 2011) (finding that prisoner who made frequent demands for blood sugar tests for his claimed hypoglycemia did not have an obvious, serious medical need where his alleged symptoms were mere discomfort and weakness or lightheadedness that caused no injury), *with Gonzalez v. Jones*, No. 07 CIV. 2126 (LAP), 2010 WL 533856, at *15 (S.D.N.Y. Feb. 11, 2010), *aff'd sub nom. Gonzales v. Nowak*, 443 F. App'x 615 (2d Cir. 2011) (determining that "severe hypoglycemia, resulting in a diabetic seizure, constitutes a serious medical condition"), *and Hadix v. Caruso*, No. 4:92-CV-110, 2005 WL 3454410, at *1 (W.D. Mich. Dec. 16, 2005) (observing that an insulin-dependent diabetic prisoner with hypoglycemia required regular monitoring of his blood glucose levels).

Even if Plaintiff has alleged a serious medical need for regular blood glucose testing and a diet in excess of 2,000 calories a day to treat his claimed hypoglycemia, he has not shown any

---

[2] According to the National Institutes of Health website, hypoglycemia is a "condition that occurs when one's blood glucose is lower than normal, usually below 70 mg/dL" and its symptoms include "hunger, nervousness, shakiness, perspiration, dizziness or light-headedness, sleepiness and confusion." Available at https://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0024699/ (last visited on March 9, 2017).

8

deliberate indifference on the part of the named Defendants. A prison official who "knows of and disregards an excessive risk to inmate health or safety" illustrates deliberate indifference—a state of mind that requires that the official: (1) be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (2) "also draw the inference." *Farmer*, 511 U.S. at 837.

Plaintiff offers no assertions to show that the named Defendants knew facts involving his hypoglycemia from which they could draw the inference that Plaintiff had a serious medical need for blood sugar tests or a diet with a higher caloric content than the diet he was being furnished, much less that they actually drew the requisite inference. Therefore, Plaintiff has failed to provide assertions of fact from which the Court can infer the state-of-mind element of an Eighth Amendment claim. Accordingly, Plaintiff has failed to state a plausible *Estelle* claim for relief.

### D. Failure to Protect

The last claim to be considered consists of allegations that Plaintiff was assaulted while he was asleep in his cell. Plaintiff maintains that, when he told the guard, Defendant Dave Snowden, that he had enemies in the cell, Defendant's only response was to advise Plaintiff that they would just have to "get along" with one another. Plaintiff claims that the attack caused him bodily injury and placed him in imminent danger.

As part of the provision against the infliction of "cruel and unusual punishment," the Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. The performance of this duty requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984).

9

Here, however, Plaintiff has sued Defendant Snowden only in his official capacity, not in his personal capacity [Doc.1 p.5]. This distinction is important because a suit against a defendant in his official capacity proceeds as though a plaintiff has sued the governmental entity the defendant represents. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003). The governmental entity Defendant Snowden represents is Warren County, Tennessee. A governmental entity, like Warren County, can only be liable where a plaintiff shows that its policy, practice, or custom has caused him to sustain a constitutional injury. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

Put simply, to state a section 1983 claim against Warren County, Plaintiff must: 1) identify the policy, 2) connect the policy to Warren County itself, and 3) demonstrate that the injury was incurred because of the execution of that policy. *Garner v. Memphis Police Dept,* 8 F.3d 358, 364 (6th Cir. 1993).

Plaintiff has claimed that the WCJ Administration is "reckless and careless" [Doc. 1 p.8], but he has not identified, nor has he even alleged, the existence of a policy, much less connected a policy to Warren County or shown that the policy caused his injury. Because Plaintiff has not stated a claim against Defendant Snowden in his official capacity, his allegations that this Defendant failed to protect him fail to state a constitutional claim.

**IV.     CONCLUSION**

Based on the above reasoning, the Court finds that Plaintiff's complaint does not state constitutional claims against Defendants. The Court further finds that any amendments to the complaint would be futile and, therefore, will not invite Plaintiff to file amendments. *See LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) (explaining that courts may allow a prisoner to amend even where his complaint is "subject to dismissal under the PLRA").

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

　　　　　　　　　　　　　　　　　　　*/s/ Harry S. Mattice, Jr.*
　　　　　　　　　　　　　　　　　　HARRY S. MATTICE, JR.
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE